MATTIE STOUT

*v.*

PORTLAND CEMENT COMPANY.

[Decided December 24th, 1909.]

1. The answer must always support the cross-bill.

2. An upper riparian proprietor unlawfully depriving a lower proprietor of the waters of the stream may not, in the absence of any contract between the parties or equity or obligation, maintain a bill to restrain the lower proprietor from suing at law for past damages to ascertain the extent and character of the upper proprietor's violations and to award damages therefor merely to prevent a multiplicity of actions, and because the lower proprietor made no complaint for two years during which the upper proprietor unlawfully took water from the stream.

On motion for preliminary injunction.

*Mr. Conover English,* for the motion.

*Mr. William C. Gebhardt, contra.*

HOWELL, V. C.

The complainant is the owner of a mill site on Pohatcong creek, in Warren county. The defendant owns about seven hundred acres of land through which this creek runs; its land adjoins the land of the complainant, it being the upper and the complainant the lower riparian proprietor. The defendant has established a large factory for the manufacture of cement on its property, and in the course of its manufacturing process it takes large quantities of water from the creek.

In the early part of the present year the complainant filed her bill in this court alleging that the defendant had been taking from the creek for its own purposes so much of the water as to sensibly diminish the amount which otherwise would naturally

flow from its land to that of the complainant, and she prays that the defendant may be enjoined from diverting, pumping, forcing or in any other way conveying the waters of the creek or its tributaries or any part thereof from their natural channel and customary course. On filing this bill a motion was made for a preliminary injunction. This was heard before Vice-Chancellor Walker, who denied the motion upon the ground that the complainant had knowingly suffered the injury complained of to continue for two years and upwards without applying for relief, and further, that in a case where the relief would, if granted, effect the stoppage of the defendant's business, the delay was fatal to the application for a preliminary injunction. There was likewise the objection that the complainant's right had not been established at law.

The defendant answered this bill and therein claimed that it had the right to use some of the water of the creek; that such use was essential to the operation of its plant; that the complainant had been cognizant from the beginning of the defendant's operations there; that it was the defendant's intention to continue to use the water; that it had had the actual and continued use of it since January, 1903, and that in the meantime the complainant had taken no legal proceedings to enjoin it from so doing. There is likewise a denial that the taking of the water from the creek interfered with or diminished the power afforded by the stream for the complainant's mill, and a further allegation that the complainant has not been damaged by reason of anything that the defendant has done.

The complainant then brought an action in tort against the defendant in the Warren county circuit court, in which it declared that the defendant for the six years preceding the beginning of the action wrongfully and unlawfully diverted and turned unnecessary and unreasonable quantities of water from the creek away from the complainant's mill and stopped the water of the creek from running and flowing along its usual course to the complainant's mill and from supplying the same with water for the necessary operation thereof, and that by reason thereof the water of the said creek did not run or flow to the complainant's mill as the same of right ought to have done

and otherwise would have done, and alleging damages amounting to $20,000.

The defendant, by leave of the court, now files a supplemental answer by way of cross-bill against the complainant in which the foregoing facts are alleged and by which it prays that the complainant may be enjoined from further proceeding with her said action at law, and that it may be determined and decreed, in case the complainant is entitled to a writ of injunction as prayed for in her said bill, what amount of compensation, if any, should be awarded to the complainant as just and equitable in lieu of the issuance of the writ of injunction prayed for in the complainant's bill.

It will be observed, therefore, that there are now two suits pending, one in this court and one in the Warren county circuit court. The suit in this court is for an injunction to prevent the defendant from future disturbance of the complainant's right. The common-law action is an action for damages for past infractions of the same right. What the defendant is now seeking to do is—*first,* to stay the suit for past damages; *second,* to have it determined by this court whether the defendant is now or has been in the past guilty of a violation of any right of the complainant to flowage of water, and *third,* if the court finds that there is such an infraction of the complainant's right that it will ascertain the extent and character thereof and award to the complainant such damages as she may be entitled to, which damages the defendant stands ready to pay. As a question of pleading it may be said that the answer must always support the cross-bill. There is a variance between them in this case which must count strongly against the defendant. The answer denies all the injury complained of, while the theory of the cross-bill is that the defendant is committing a continuous trespass on the rights of the complainant, and that it desires to continue the same trespass indefinitely and to pay therefor such sum as this court may assess. If the defendant is guilty of the charge laid to its door it is depriving the complainant of a valuable right in the waters of the creek, and this right is property to which the complainant is entitled. Shortly, then, the case under the cross-bill takes upon itself the aspect of an attempt to

take private property for private uses upon such compensation being made as the court may award. This, of course, is not to be thought of. There is no proceeding known to the law by which one man can take the property of another for the private use of the taker, no matter what rate of compensation may be offered. This would be an interference with vested rights and cannot be permitted. It will be observed that there is no contract between these parties upon which the cross-bill in this case can be predicated, nor is there any equity alleged by which the bill can be supported, excepting that the jurisdiction invoked may be exercised to prevent a multiplicity of suits. I do not understand that the doctrine touching the power of this court to interfere with a multiplicity of suits extends to the case made by the cross-bill. In short, what the defendant says is this:

"I am committing a most flagrant disturbance of the right of the complainant for which she is suing me. I desire to continue my trespass and to enjoin her suits for damages, not because I have any right in her land, but because she is bringing actions to defend the title to her property which I want and am willing to pay for."

The fact that the complainant lay still and made no complaint for a period of two years, during which time the defendant took water from the stream, may have been sufficient laches to have justified the court in denying to her the provisional relief which she sought, but is she to be deprived of the title to her estate because she did not bring suit immediately upon the beginning of the trespass?

A case similar to this is *Stevenson* v. *Morgan, 64 N. J. Eq. (19 Dick.) 219.* There the complainant brought suit in this court to restrain the defendant from raising his dam and flowing the complainant's land; he also asked for an assessment of unliquidated damages for injuries caused by past overflows. Vice-Chancellor Grey, who heard the case, held that the equitable relief by injunction against future overflows and the right to recover damages for past overflows were not parts of the same cause of action and that each might be prosecuted separately from the other. A very common instance of a procedure of this sort arises in actions for nuisance, where it is quite the cus-

tomary thing to bring a common-law action for past damages and at the same time exhibit a bill for an injunction to prevent future injuries.

It was said on the argument on behalf of the defendant that the very thing sought to be done by it in the case at bar had time and again been done in this court and been sanctioned by the court of errors and appeals, and a number of cases was cited in support of the statement. Among the others is *Sparks Manufacturing Co.* v. *Town of Newton, 57 N. J. Eq. (12 Dick.) 367.* That was a case in which the complainant sought to restrain the town of Newton from diverting water from the stream which supplied their mill to furnish a municipality with potable water. The court found on the facts and the law in favor of the complainant and proceeded to assess the complainant's damages by reason of the diversion; this course was taken because both parties joined in requesting it. Vice-Chancellor Pitney said (*p. 392*) that inasmuch as both parties had submitted themselves to the jurisdiction of the court, and requested that he should determine the amount of compensation, he felt constrained by the state of the authorities to assume that jurisdiction. This view was coincided in on appeal in *Ingersoll* v. *Newton, 60 N. J. Eq. (15 Dick.) 400.*

A perusal of this case will disclose the fact that the main ground for jurisdiction to assess damages was the fact that both parties had submitted themselves to the jurisdiction of the court on that question.

The Passaic river pollution cases are also cited as an example of what the court may do in the same direction; but these cases stand not upon the power of the court to take a man's property and devote it to private uses by other people upon compensation, but rather upon the equitable consideration of convenience. There the court found that the city of Paterson was guilty of polluting the river, but denied an injunction to stop it on the ground that it would work great injury to the defendant to stop immediately the flow of its sewage into the river, and for that reason suggested a substitutionary remedy, the resort to which was assented to by the defendant. These cases necessarily stand by themselves and are no authority for what the defendant

here seeks to do. Another class of cases is illustrated by *Paterson and Newark Railroad* v. *Kamlah, 47 N. J. Eq. (2 Dick.) 331.* There a railroad company having the power of condemnation obtained possession of land which belonged to Kamlah; he brought ejectment. This court enjoined his suit and ascertained the value of the land and the damages and directed that he should make conveyance to the company upon payment of the amount so ascertained; but this was based upon the fact that the company had the right of condemnation, and the legislature had provided a method by which the railroad company might acquire title. There is nothing in the report to show whether the parties consented to that particular method of ascertaining the value or not. Vice-Chancellor Pitney refers to the remedies arising out of the power of condemnation in the case of *Sparks Manufacturing Co.* v. *Newton, supra.*

In *New York and Greenwood Lake Railroad Co.* v. *Stanley, 34 N. J. Eq. (7 Stew.) 55; affirmed, 35 N. J. Eq. (8 Stew.) 283,* there was an agreement between the defendants and the Montclair Railway Company by virtue of which that railway company entered upon the defendants' lands and constructed its railway over them. The railway company did not perform the covenants of the contract on its part to be performed; it failed, and after two foreclosures title to the railroad line came to the complainant company, which filed its bill to enjoin an action of ejectment which the defendants had begun, and to obtain title upon the performance of the agreement made by the Montclair Railway Company. The defendants, by their answer, declared their willingness to convey on receiving compensation for their land and damages assessed as of the date when the Montclair Railway Company went into possession, with interest. The chancellor held that the complainant had a right to equitable protection against the defendants' legal right to the same extent, and on the same terms, that the Montclair Railway Company would have been entitled to it, and thereupon assessed damages in accordance with the submission of the parties. On appeal the same position was taken.

In these cases and in all the other cases cited on the defendant's brief there was some right or some equity or some contractual

relation which permitted the court to compel a transfer of title upon an ascertainment and payment of proper compensation. In the case at bar I find neither contract nor equity nor obligation of any kind on the part of the complainant which can be made the basis of the decree which the defendant seeks. She shall not lose her right because she did not immediately protest against the trespass. In short, the action of the defendant appears to me to be a pronounced disturbance of the complainant's right, begun without even a claim of right and continued deliberately and with the intention of compelling the defendant to yield to the demands of the complainant. This is a situation which no court of conscience could look upon with any degree of favor.

There was considerable argument on the question whether this court had the right to assess unliquidated damages, but in view of the result that I have reached it will be unnecessary to enter upon that somewhat vexed question.

I will advise a decree denying the defendant's motion for a preliminary injunction.